OK, Mr. Hawkins, congratulations on your recent elevation. Thank you, Your Honor. May it please the court, Kyle Hawkins for the Texas Education Agency. The court should set aside the department's decision for two independent reasons. First, the state complied with subsection 18 because it never reduced its financial support. And indeed, it makes available the same financial support every year. Second, the state's understanding of subsection 18 is at a minimum reasonable. But you've rewritten the statute in the process. I'm sorry, Your Honor. You have rewritten the statute in the process. You've rewritten the statute in a way that you think is maybe a more reasonable or reasonable way to do what the law says. Your Honor, I don't think we have rewritten the statute. I think it is the department that is rewriting the statute here by adding the words aggregate and per capita to the statute. We look at the plain text of the statute. Well, but you've added words like individual needs of children. The statute doesn't say anything about that. Oh, it does, Your Honor. The statute speaks to the unique needs of children. That is written into the statutory text in Section 1400 of the Title 20 of the U.S. financial support for children with disabilities in accordance with their unique needs in order to ensure that they receive a free, appropriate public education as the statute requires. Now, subsection 18 provides that the state may not reduce the amount of state financial support for special education and related services for children with disabilities or otherwise made available. The state is a purely passive actor in the Texas special education funding system. The state has never reduced any financial support and it makes available the exact same amount of financial support every year. In Texas, funding for special education occurs according to a formula written into Texas law in 1995, two years before Congress enacted subsection 18. Under that formula, the state has no discretion with regard to funding. It receives data from school districts, processes that data under the statutory formula and disperses funding according to whatever that formula dictates. Now, there's a couple of key points to take away from that process. One, as I said, the state has no discretion. It is a purely passive actor, mechanically providing whatever the local school districts ask for based on the inputs that they report to the state. Second, the state makes available the exact same amount of financial support every year. There is no statutory cap in Texas. There is no... Well, that begs the question of what's meant by the amount of financial support. I mean, you're spending, what, 33 million less? In 2012, Your Honor, there was a 33 million dollar decrease in total per capita spending in connection with special education. We did not, however, reduce the amount of financial support. Financial support does not necessarily mean a raw budgetary expenditure figure. What it means is providing what is... It doesn't matter whether you actually spent the money, you just made it available. It would have been available if you needed it. Exactly, Judge Higginbotham. Well, the difficulty of that is, to me, is that the purpose of the Congress and these kinds of programs is to avoid the temptations that are obviously there for states to shift the burden, the heavy financial burdens of these programs to the federal fiscal. And that's the context in which you approach this statute. Your Honor, I don't think there's any evidence that that's happening here. The local education districts are reporting to the state their needs for special education, and we provide financial support commensurate to that. There's never any instance in which we say, we're going to disregard your need here and let the federal government pay for it instead. None of that happens, and the record doesn't suggest otherwise. As I said, the state has no discretion. There is no statutory cap, no limit to the amount the state can disperse. Texas law does not regard the Texas, does not allow the Texas Education Agency to disregard a request from a school district. Now, the Department claims that we violated subsection 18 because in 2012, as we discussed, the state's total per capita expenditures went down. According to the Department, to reduce financial support means to decrease actual per capita expenditures. But there are at least two problems with the Department's approach. First, Congress never used the term aggregate. It never used the term per capita. It could have, but didn't, and that is why Judge Smith, as I indicated earlier, it is the Department that adds words to the statute. Instead, Congress wrote a deliberately broad statute. By choosing the words financial support, Congress created an inquiry broader than simply looking at a single column on a spreadsheet. And in any event, the Department cannot seriously dispute that Texas makes available the same amount of financial support every single year. That amount has not varied since 1995. I'd like to turn to the second independent reason for setting aside the Secretary's final decision. The Supreme Court has held repeatedly that the federal government cannot enforce ambiguous grant conditions. If the court holds that the Department's view of the statute is reasonable, then that would only establish that both parties have put forward reasonable constructions of subsection 18. In that case, the Department cannot withhold IDEA funding simply because it disagrees with the state's reasonable interpretation. That's the holding of the Pennhurst case and the Arlington Central case, which requires statutory conditions to be ambiguous and require grant programs to put states on clear notice of their conditions. For the reasons we discussed earlier, the state's view of subsection 18 is at a minimum reasonable. There's a few items here I think are worth keeping in mind. One, as I indicated earlier, our statutory scheme predates subsection 18. We passed our statute in 1995. Congress added subsection 18 in 1997. Until this dispute, we have never received any indication from Congress or the Department that the 1997 IDEA amendments overrode our preexisting statutory scheme. And indeed, there is nothing in the text of IDEA suggesting a desire to target and override Texas's preexisting scheme. Unless the court has further questions on either of those two points, I would reserve the remainder of my time for rebuttal. Yes, you say time for rebuttal, Mr. Hawkins. Thank you. Thank you, Your Honor. Ms. Marcus. Thank you, Your Honor. I'm Stephanie Marcus from the Department of Justice, and I represent Respondent, the U.S. Department of Education.  The statement of the statute is dispositive. It's dispositive on the statutory interpretation point and on the clear statement point. Here, the maintenance of state financial support provision means just what it says. A state cannot reduce the amount of financial support, which is funding or appropriations, made available from one fiscal year to the next. So is then I just I think I understand your position, but I want to be sure. So you're saying that even in a perfect world, there were no children with needs under this statute in the entire state, that the state still would not be able to reduce its funding by one dollar. That's right, Your Honor. And Congress has provided for waivers and that in Texas in its briefing is conflating the free appropriate public education condition, which is a separate condition from the maintenance of state financial support provision. And there is a provision in the maintenance financial support requirement that states that the state can apply for a waiver on the basis that it provides a free appropriate public education to every child in the state. So if there's no exception for. Needing fewer services, what Texas is doing is saying the students in our state don't need as many services, but that would give states the opportunity to circumvent the requirement that they maintain financial support if they were allowed to just reduce services and say they are. This is the same that the words amount and financial are ignored by Texas here. And the in order to obtain a waiver, they would have had to produce clear and convincing evidence and comply with the secretary's regulations on that. And they didn't even apply for one, even though the secretary in the administrative process gave noted several times that they had the opportunity to apply for a waiver. And here we think that the Supreme Court's later cases in Forrest Grove and in and in Davis show that the Arlington case is did not change what the Supreme Court said in Bennett, which is and we think the Bennett case is directly on point. This is a grant from the Supreme Court. The program, the the state and the federal government, there is a clear condition here set by Congress, and there is no obligation on the federal government to delineate every possible application that would violate that provision. Here, Texas's system is. Does not satisfy the plain language of the statute, and therefore the secretary's decision should be affirmed. All right. Thank you, Ms. Marcus. Thank you, Mr. Hawkins. You say time for rebuttal. Thank you, Your Honor. Just a couple of brief points in rebuttal. First, it's worth emphasizing that the state of Texas provides a free, appropriate public education to children with disabilities. There is no evidence in the record that we do not. And the department has never alleged that we do not provide a free, appropriate public. You know, the reason Texas didn't apply for a waiver? Your Honor, we didn't apply for a waiver because we didn't have to. Our reading of the statute is correct and at a minimum reasonable. Applying for a waiver is a burdensome, expensive process. If we were to apply for a waiver every time the department puts forward a view of the statute we think is incorrect, we think that would set a harmful precedent. We didn't think it was appropriate to apply for a waiver in this case when our view of the statute is reasonable. And it was burdensome and expensive. That's correct. Yes. And then finally, with regard to the cases that the department relies on, it's worth noting their brief leans heavily on the Bennett case. But Bennett explicitly holds, as a matter of the Pennhurst analysis, that, quote, there was no ambiguity with respect to this condition. The department suggests that Bennett, Davis and these other cases somehow upend the Pennhurst and Arlington Central line of inquiry. That's simply not correct. Those cases apply the rule from Pennhurst, say that there is no ambiguity for purposes of Pennhurst, that the states are on clear notice. And that's the end of the Pennhurst inquiry. The same would be true here. If the statute were indeed unambiguous and put us on clear notice, then under Bennett, it's true that we would not be able to prevail. But here we have an ambiguous statutory condition. And so Bennett has no relevance. The same is true of the Davis case, as well as the Forest Grove case. Finally, your honors, if I may, the court granted expedited consideration of this case, and for that we are grateful. We would request, if at all possible, a decision from this court prior to mid-December, December 15th. Mid-December is a relevant date in the process of the state budgeting   make a decision prior to mid-December, December 15th. And therefore, we would respect the request of decision by mid-December. Unless I guess I just find it interesting that you made it sounds like an economic decision not to apply for a waiver, but litigation is less expensive. Your honor, we we didn't think this needed to come to litigation. As the record indicates, we thought you were right about an interpretation of the statute and the department thinks it's right. So. Your honor, you didn't think that might come to litigation? Your honor, we didn't initiate this. The department issued a notice that it was withholding the funding and only at that stage was obvious that we needed to challenge through the administrative process the department's decision here as being unlawful. That's when we went into the administrative proceedings. We wish that we weren't in litigation. We wish the department would accept our view of the statute as at a minimum reasonable because we believe it is. And that's why we didn't think it was appropriate to apply for a waiver. The litigation is cheaper for the state because they get off a good counsel for very little money. Thank you, Judge. All right, thank you, Mr. Hawkins, your case is under submission. Thank you, your honor. Last case for today, Refractable Technologies, Incorporated versus Spectin, D.A.